# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| Janis Lundy-Owsley, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action File No.: |
| | ) | |
| v. | ) | |
| | ) | |
| CF Medical, LLC and | ) | **COMPLAINT WITH** |
| Capio Partners, LLC, | ) | **JURY TRIAL DEMAND** |
| | ) | |
| Defendants | ) | |

## PRELIMINARY STATEMENT

This action for damages is based upon the Defendant's overt and intentional, unlawful conduct in the furtherance of its efforts to collect a consumer debt. The Defendant's conduct is in violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq. and the Georgia Fair Business Practices Act, (GFBPA) O.C.G.A. 10-1-390 et seq.

## PARTIES

1. Plaintiff, Janis Lundy-Owsley, is a natural person who resides in Fulton County, Georgia.

2. Defendant CF Medical, LLC (hereinafter referred to as "CFM") is a limited liability corporation headquartered in Las Vegas, Nevada. It is authorized to

do business in Georgia and can be served through its registered agent, CT Corporation System, 289 S. Culver St., Lawrenceville, Georgia, 30046

3. Defendant, Capio Partners, LLC, is a limited liability corporation authorized to do business in Georgia and can be served through its registered agent, CT Corporation System, 289 S. Culver St., Lawrenceville, Georgia, 30046.

## JURISDICTION AND VENUE

4. This Court has federal question jurisdiction over Plaintiff's *Fair Debt Collection Practices Act* ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5. This Court has personal jurisdiction over Defendant because, *inter alia*, Defendants frequently and routinely conducts business in the State of Georgia, including the conduct complained of herein.

6. Pursuant to 28 U.S.C. § 1391, venue is proper in the Northern District of Georgia because a substantial part of the events or omissions giving rise to the claims occurred in this district.

7. Venue is proper in the Atlanta Division because the conduct complained of herein occurred in Fulton County which is in the Atlanta Division.

## FACTUAL ALLEGATIONS

8. Plaintiff is allegedly obligated to pay a consumer debt arising out of medical services and is therefore, a "consumer", as that term is defined by 15 U.S.C. § 1692a(3).

9. CFM is a debt-buyer specializing in the purchase and collection of defaulted medical debt.

10. CFM uses interstate commerce and/or mail in its business in the collection of consumer debts.

11. CFM manages, and collects upon, thousands of consumer debt accounts annually.

12. CFM is, therefore, a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

13. Capio is both is a debt-buyer and a collector for third parties. It too specializes in the purchase and collection of defaulted medical debt.

14. On its website Capio touts its services by writing, describes itself "[a]s the largest purchaser of healthcare receivables in the country, Capio can offer healthcare providers immediate cash acceleration after accounts have been designated as bad debt."   *https://capiopfw.com/patientcomplete/* (Last visited 9/22/2021)

15. Capio uses interstate commerce and/or mail in its business in the collection of consumer debts.

16. Capio manages, and collects upon, thousands of consumer debt accounts annually.

17. Capio is, therefore, a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

18. The Plaintiff has fallen behind on a number of consumer debts, mostly medical expenses, over the last few years.

19. Among the accounts in default were at least two charges originating with Northside Emergency Associates, P.C. (hereinafter "Northside").

20. Upon information and belief, CFM purchased these defaulted accounts to collect for its own benefit.

21. CFM retained the services of Capio to act as its collecting agent for the debt it had purchased and owed by the Plaintiff.

22. For all times relevant hereto, Capio was the agent of CFM. All actions taken by Capio in furtherance of the Defendants' goal of collecting these debts from the Plaintiff were taken with the knowledge, for the benefit, and at the behest of CFM.

23. Capio began collection activities against the Plaintiff including adverse credit reporting and sending collection letters to her.

24. Because of her dire financial condition, the Plaintiff concluded she simply could not pay the accounts being collected which, based upon a review of her

credit report, as published by Transunion, she believed totaled $1,561.00. This comprised two accounts originating with Northside for $1,450.00 and $111.00, respectively.

25. The Plaintiff did not want to receive any further communications from the Defendants regarding the Northside debts.

26. The Fair Debt Collection Practices Act provides an indisputable means by which a consumer may discontinue most communications from a collector, thereby preserving their peace.  15 U.S.C. § 1692c.

27. The act states specifically, "If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt, or if the consumer wishes the debt collector to cease their communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt.  15 U.S.C. § 1692c(c).

28. The statute further provides three exceptions related to future communications. Specifically, the prohibition does not apply where the collector is advising the consumer that further efforts are being terminated; that the collector may invoke specified remedies which are ordinarily invoked by such a debt collector; or that the debt collector intends to invoke a specified remedy.

29. On June 10, 2021 the Plaintiff caused to be sent to Capio a letter in which she identified the creditor for whom she believed it to collecting, Northside

Emergency Associates and the amount in collection -- $111.00. Plaintiff's letter clearly advised Defendants, "I will not be making a payment on this account."

30. Plaintiff's letter of June 10th, 2021 was sent certified. Per the United States Postal Service, it was delivered to Capio on June 14, 2021 at 10:52 a.m.

31. A reproduction of the tracking and delivery data made available through the USPS website appears below.



32. On June 14, 2021 the Plaintiff caused to be sent to Capio a letter in which she identified the creditor for whom she believed it to collecting, Northside Emergency Associates and the amount in collection -- $1,450.00. Plaintiff's letter clearly advised Defendants, "I will not be making a payment on this account."

33. Plaintiff's letter of June 14th, 2021 was sent certified. Per the United States Postal Service, it was delivered to Capio on June 18th, 2021 at 10:28 a.m.

34. A reproduction of the tracking and delivery data made available through the USPS website appears below.



35. Plaintiff's statements that she will not be making a payment on the account was a refusal to pay the account.

36. Plaintiff's written correspondence was sent to Defendants with the intention that Defendants cease contacting Plaintiff about the debt.

37. The FDCPA does not require Plaintiff's refusal to pay to be unconditional, nor does it require that Plaintiff's wish to be left alone be stated in the

most general terms. *See Barnes v. Seterus, Inc.*, 2013 U.S. Dist. LEXIS 180418, at *4-5 (S.D. Fla. Dec. 26, 2013).

38.   The ordinary meaning of refuse does not encompass an unalterable rejection and the FDCPA does not require that the consumer use any specific language or magic words to tell a debt collector to cease communication. *Bishop v. I.C. Systems, Inc.*, 713 F. Supp. 2d 1361, 1367-68 (M.D. Fla. 2010).

39.   Notwithstanding the written notice provided to the Defendants described herein, Defendants continued to contact the Plaintiff. Specifically, on July 8, 2021 Capio sent a letter to the Defendant seeking a total of $1,597.00 On the second page of the letter it itemized the accounts that comprise the total. Of the three accounts there listed, two were the subject of Plaintiff's letters of June 10th and 14th, 2021. A copy of Defendants' letter is filed herewith as Exhibit 1. [1]

40.   Defendants' letter of July 8th does not come under the exceptions that preclude it from being a violation of 15 U.S.C. § 1692c(c).

41.   The Defendant's letter of July 8th contained highly sensitive and personal information related to the Plaintiff, including a) the Plaintiff's name and address; b) the name of the Plaintiff's creditor; c) that the Plaintiff had a debt; d) the exact amount alleged to be owed; e) that the debt was in default; and f) that the debt was being collected by a collection agency.

---

[1] Plaintiff's counsel has redacted the Plaintiff's home address from Exhibit 1.

42. The letter received by the Plaintiff shows an Intelligent Mail Barcode (IMB) just above the address of the Plaintiff. This IMB code has been highlighted for ease of reference on Exhibit 1.

43. IMBs are used by the United States Postal Service and contain information that includes the name and other identifying information of the actual sender of the item.

44. The IMB displayed on the collection letter received by the Plaintiff, when decoded, reveals that the sender was not the Defendant, but rather Compumail, a mailing service that has no relationship with the Defendant other than that of a service vendor.

45. The Plaintiff believes and therefore avers that the Defendant communicated the personal information regarding the Plaintiff and her debt to Compumail in connection with the debt being collected and for the express purpose of facilitating that collection.

46. The transmission of this information by the Defendant was an invasion of the Plaintiff's privacy.

47. Without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a post judgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person

other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector. 15 U.S.C. § 1692c(b).

## INJURIES-IN-FACT

48. The FDCPA provides consumers with "statutorily-created rights to be free from 'being subjected to false, deceptive, unfair, or unconscionable means to collect a debt.'" *McCamis v. Servis One, Inc.*, No. 8:16-CV-1130-T-30AEP, 2016 U.S. Dist. LEXIS 99492 (M.D. Fla. July 29, 2016); *Church v. Accretive Health, Inc.*, 654 Fed. Appx. 990, 2016 U.S. App. LEXIS 12414, 2016 WL 3611543 (11th Cir. 2016).

49. An injury-in-fact sufficient to satisfy Article III standing requirements "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Church*, at 993, quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982).

50. Violation of statutory rights are not a "hypothetical or uncertain" injury, but one "that Congress has elevated to the status of a legally cognizable injury through the FDCPA." *McCamis*, at 4, citing *Church*, at 3.

51. Defendant is subjecting Plaintiff to unfair means to collect the debt.

52. Defendants acts and omissions caused particularized harm to the Plaintiff in that they violated the Plaintiff's peace and solitude and the Defendant's

communication of the Plaintiff's personal information violated a clear statutory right and was an invasion of Plaintiff's individual privacy.

53. Accordingly, through the violation of Plaintiffs' statutorily created rights under the FDCPA, Plaintiff has suffered an injury-in-fact sufficient to establish Article III standing.

## DAMAGES

54. As a result of the Defendant's actions and/or omissions, Plaintiff has suffered actual damages, including but not limited to the following:

   a.) Being subjected to unfair debt collection practices;

   b.) Uncompensated time expended away from work and/or activities of daily living, to confer with counsel regarding the Defendant's collection efforts;

   c.) Disturbance of the Plaintiff's peace and her right to be free of communications from the Defendant;

   d.) The Plaintiff suffered a violation of her right to privacy.

   e.) Anxiety and worry caused by concern that Defendant was going to continue making demands for payment despite the Plaintiff's written notice she would not pay the debts; and that Defendant would continue to disseminate private and sensitive information to third parties. The anxiety and worry experienced by the Plaintiff was sufficient to negatively affect her demeanor, her ability to engage in

daily activities, resulted in sleeplessness, and adversely affected her relationships with others.

## CAUSES OF ACTION

### COUNT I

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. § 1692 et. seq.

*Violations of 15 U.SC. § 1692c(b)*

55. Defendants' communication of Plaintiff's personal information to Compumail as described herein was a violation of 15 U.S.C. § 1692c(b). See, *Hunstein v. Preferred Collection and Management Services, Inc.*, No. 19-14434 (11th Cir. April 21, 2021).

*Violations of 15 U.SC. § 1692c(c)*

56. Defendants' communications with the Plaintiff after June 18, 2021 were a violation of 15 U.S.C. § 1692c(c)

### COUNT II

### VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT
### O.C.G.A. § 10-1-390, et seq.

57. Plaintiff incorporates by reference paragraphs 1 through 56 as though fully stated herein.

58. O.C.G.A. § 10-1-390 et seq is commonly known as the "Fair Business Practices Act of 1975" (the "GFBPA").

59. The purpose of the GFBPA, is to protect consumers from unfair and/or deceptive practices in the conduct of any trade or commerce in part or wholly in the state. O.C.G.A. § 10-1-391.

60. O.C.G.A. § 10-1-391 directs that the GFPBA is to be interpreted and applied liberally and in harmony with the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1), which implements the FDCPA.

61. O.C.G.A. § 10-1-393(a) of the GFBPA broadly prohibits unfair and/or deceptive business practices.

62. Defendant intentionally engaged in unfair and deceptive business practices, as set forth herein, in an effort to collect a consumer debt.

63. Defendant's conduct has implications for the consuming public in general.

64. Defendant's conduct negatively impacts the consumer marketplace.

65. Upon information and belief, Defendant does not maintain a place of business in Georgia and has no assets in Georgia, thus relieving Plaintiffs of the Notice and Demand requirements of O.C.G.A. § 10-1-399(b).

66. As a result of Defendant's violations of O.C.G.A. § 10-1-393(a), Plaintiff is entitled to recover general damages pursuant to O.C.G.A. § 10-1-399(a).

67. As a result of Defendant's intentional violations of O.C.G.A. § 10-1-393(a), Plaintiff is entitled to recover exemplary damages pursuant to O.C.G.A. § 10-1-399(a).

68. As a result of Defendant's intentional violations of O.C.G.A. § 10-1-393(a), Plaintiff is entitled to recover treble damages pursuant to O.C.G.A. § 10-1-399(c).

69. Plaintiff is entitled to recover reasonable attorney's fees and expenses of litigation pursuant to O.C.G.A. § 10-1-399(d).

## TRIAL BY JURY

70. Plaintiff is entitled to and hereby requests a trial by jury.

WHEREFORE, Plaintiff prays that judgment be entered against Defendant for:

a.) Plaintiff's actual damages;

b.) Statutory damages pursuant to 15 U.S.C. § 1692k;

c.) Reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k

d.) General, exemplary, and treble damages pursuant to O.C.G.A. § 10-1-399(a) & (c);

e.) Reasonable attorney's fees and costs pursuant to O.C.G.A. § 10-1-399(d); and

f.) Such other and further relief as may be just and proper.

Respectfully submitted this 24th day of September 2021.

                                           **BERRY & ASSOCIATES**

                                           */s/ Matthew T. Berry*
                                           Matthew T. Berry
                                           Georgia Bar No.: 055663
                                           matt@mattberry.com
                                           2751 Buford Highway, Suite 600
                                           Atlanta, GA 30324
                                           Ph. (404) 235-3300
                                           Fax (404) 235-3333

                                           *Plaintiff's Attorney*